UNITED STATES *v.* HENRY A. WESS, INC. (No. 5232)*

United States Court of Customs and Patent Appeals, March 9, 1967

*John W. Douglas*, Assistant Attorney General, *Mortan Hollander, Harvey Zuckman* for the United States.

[Oral argument February 6, 1967 by Mr. Zuckman ; submitted on record by appellee]

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK**

ALMOND, Judge, delivered the opinion of the court:

The United States appeals from the judgment of the Customs Court, First Division, sustaining a protest against the classification of artificial plastic roses electrically plugged into plastic baskets, which have electric cords and plugs capable of being plugged into electrical outlets, as being in chief value of artificial flowers, composed of "other materials," dutiable at the rate of 35 percent ad valorem under paragraph 1518(a) of the Tariff Act of 1930, as modified.

Appellee made nine alternative claims for classification, either directly or by similitude under the provisions of paragraph 1559 of the Tariff Act of 1930, as amended, including the claim of classification under paragraph 31(a) (2), as modified, as finished or partly finished

---

*C.A.D. 903.

**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

articles of which cellulose acetate is the component material of chief value, not specifically provided for, dutiable at 18 percent ad valorem.

The Customs Court held that the items in dispute, designated as "Kokato Rose Lamps," were properly dutiable under said paragraph 31(a)(2). The protest was overruled as to appellee's other claims.

The issue, therefore, is whether the Customs Court was correct in holding that appellee had met the burden of establishing by a preponderance of the evidence that the merchandise was not properly classifiable under the provisions of paragraph 1518(a) and that it was properly classifiable under the provisions of paragraph 31(a)(2).

The statutes involved are in pertinent part as follows:

Paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 53865:

> Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:
>
>    *           *           *           *           *           *           *
>
> Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts provided for in the preceding item 1518(a) which components are wholly or in chief value of—
>
>    *           *           *           *           *           *           *
>
> Other materials (not including feathers) _____ 35% ad val.

Paragraph 31(a)(2) of the Tariff Act of 1930, as modified by T.D. 54108:

> Cellulose acetate, and compounds, combinations or mixtures containing cellulose acetate:
>
>    *           *           *           *           *           *           *
>
> (2) Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for_____ 18% ad val.

As noted above, the collector classified the subject merchandise:

* * * as articles nspf in chief value artificial flowers and leaves and stems, chief value other materials nspf under Par. 1518 * * *.

The record consists of the testimony of two witnesses called by plaintiff-appellee and three exhibits (plaintiff's exhibits 1, 2, and 3) received in evidence for the purpose of identifying the merchandise in issue. As disclosed by exhibits 1 and 2, the lamps are composed of two different size plastic baskets, round or oval in shape, each with an electric cord. The baskets contain from one to three artificial roses (stems, leaves and flowers) with an electrical plug at the stem end designed to be plugged into an electric socket at the bottom of the basket. The rose buds include small bulbs which light up when an electrical connection is made by plugging the cord from the basket into an electrical outlet.

The witness John Hrebenyar, the actual importer,[1] testified that at the time of importation most of the merchandise was disassembled, in that the roses were packed separately, but the components were designed to be used together as an entirety. He testified that he personally sold the items in dispute and had seen them used as TV lamps and night lights. He stated that electricity was essential for lighting items like exhibits 1 and 2 and demonstrated their lighting capacity to the court. The witness expressed the opinion that the items are not similar in use to earthenware, chinaware or glass lamps since the imported articles are unbreakable, but that, insofar as their ability to light up a room is concerned, the imported articles perform in the same manner as porcelain, glass or earthenware night lights.

The other witness, James F. Jedlicka, a deputy appraiser, United States Customs Service, testified he had arranged to have an analysis made of the merchandise by the Customs laboratory in Philadelphia. The report on this analysis, exhibits 3, disclosed that the stem, leaf and flower portion of the articles in issue was in chief value of cellulose acetate.

In sustaining the protest insofar as appellee claimed classification under paragraph 31(a)(2) of the Tariff Act of 1930, as modified, the Customs Court reasoned that whether an article is an artificial flower, leaf or stem is to be determined by its per se character and that the merchandise under consideration consisted of "something more than just a basket of artificial roses." The court stated:

The representative sample is a wired electric lamp, which, when not lighted, serves a secondary function as an ornament. Plaintiff's witness who testified that he had personally bought items such as those at bar, stated that he had seen such items being used many times. His further testimony was to the effect that the articles were used in the same places and for the same purposes as ordinary night lights. There is no other evidence in the record tending to disprove that they were not so used.

\*       \*       \*       \*       \*       \*       \*

\* \* \* we are of the opinion that the primary function of the involved articles is for lighting purposes, their use for ornamentation being secondary. Accordingly, for the reasons heretofore stated, we are of opinion and hold that the merchandise at bar is not properly classifiable under the provisions of paragraph 1518, as modified, *supra*.

The report of the analysis of the involved merchandise, as heretofore indicated, conclusively establishes, in our opinion, that the stem, leaf, and flower portion of these articles—which plaintiff apparently concedes constituted the component material of chief value—is in chief value of cellulose acetate. Articles composed in chief value of cellulose acetate are specifically enumerated in paragraph 31(a)(2) \* \* \*. It having been held that the involved articles are not subject for classification purposes to the provisions of paragraph 1518, *supra*, we are of the opinion that said merchandise is more specifically provided for under para-

---

[1] The appellee herein, Henry A. Wess, Inc., is Hrebenyar's Customs House broker.

graph 31(a)(2) * * *, *supra*, than under the provision for nonenumerated articles in paragraph 1558 of the said act, and, similarly, that it is not classifiable under the other claimed paragraphs of the tariff act. Accordingly, we hold the merchandise at bar properly classifiable under paragraph 31(a)(2) of the Tariff Act of 1930, as modified, *supra*, at the rate of 18 per centum ad valorem as articles of which cellulose acetate is the component material of chief value, not especially provided for, as claimed. * * *

Appellant contends [2] that the criteria applied by this court in *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958), to the effect that the decisional process in cases of this nature involved inclusion or exclusion from the definition of artificial flowers "in accordance with common understanding" and that such understanding included questions of closeness of simulation, suitability to the ornamental use of real flowers, size of the item, primary function and ordinary common sense, leaves no room for substantial doubt that the floral portions of the items in dispute are artificial flowers, i.e., roses with buds, leaves and stems. The court below relied heavily on the *Marshall Field & Co.* case, supra, and of course did not dispute the criteria therein applied. The "something more than just a basket of artificial roses" was that the primary function of the articles in issue "is for lighting purposes," with their ornamental aspects being of secondary moment. Appellant argues that the fact that the item has something "more" than just artificial roses is not a valid predicate upon which to preclude application of paragraph 1518(a) for the reason that the provision applies not only to artificial flowers per se but also to articles composed "in chief value" of artificial flowers. Appellant stresses the fact that:

Paragraph 1518(a), in express terms, covers "all articles not specially provided for, composed wholly *or* in chief value of * * * leaves, flowers, stems * * *." [Emphasis appellant's.]

It is the essence of appellant's contention that, in view of the electrical features, it is not asserted that the items taken as a whole are artificial flowers per se, but rather that they must be viewed as composed "in chief value" of artificial roses and it does not matter for classification purposes that, in addition to the decorative and ornamental features, the items also have a practical use of providing low-key illumination.

Appellant's ingenuous argument is not persuasive of the validity of the conclusion which appellant seeks to establish. It may well be conceded that the "something more" aspect of a given case is not of itself a sufficient predicate to sustain a determination of whether or not imported goods of the nature here disclosed come within the ambit of

---

[2] Appellee, having filed no brief, did not appear by counsel in argument before us but submits the case on the record made below.

paragraph 1518(a). If "something more" is accepted as the guiding norm, then each case would involve not only a determination of what constitutes "something more" but also how much more. Rather, we think that the determinative considerations involve the application of common understanding, common sense, and good judgment to specific factual situations, as and when presented, with samples of the imported goods serving as "potent witnesses" in determining the propriety of their classification under paragraph 1518(a). The decided cases in this area of customs jurisprudence sustain this observation.

The earliest case to which our attention is directed is *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, 64, T.D. 38336 (1920), wherein the goods were held to be dutiable as artificial flowers and leaves. The goods involved "a cluster made of black straw" fashioned into the form of berries or grapes attached to a black straw leaf with the stem being made of black straw and metal, and "a spray of black leaves bearing a black rose" made of black straw secured by thread to a woven fabric base. The court stated:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance *sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits* produced not by nature, but by the hand of man, and which at the same time are *appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.* [Emphasis ours.]

In *Coro Inc.* v. *United States*, 39 CCPA 154, 157–8, C.A.D. 478 (1952), the court had occasion to refer to and point out the essence of the reasoning in the *Cochran* case. *Coro* involved classification of a brooch as jewelry in chief value of artificial flowers. The brooch was designed for use on women's hats and other outer garments for ornamentation. The brooch consisted of three layers of metal superimposed one on another in successively reduced diameters. The trefoil portions were black in color with silver-like edging. A metal post in the center of the brooch held a piece of faceted glass. The brooch was held not to be in chief value of artificial flowers. Commenting on the language employed in the *Cochran* case as hereinabove quoted, this court stated that:

* * * under the succinct wording thereof, even though the imported articles need not directly represent any natural flower, fruit, leaf, or stem, if those things are simulated in their physical characteristics and appearances so as to be regarded as such in *common understanding* as being made by man instead of being produced by nature, that they come within the scope of the Tariff Act providing for artificial plant life.

We desire to draw particular attention to the latter portion of that quotation which determined that, even though the artificial articles possess the attributes and qualities set forth in the previous portion of the quotation, those articles must be such that they "* * * at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted." [Emphasis ours.]

In holding the goods to be costume jewelry in the form of brooches, the court in *Coro* reasoned that, while the articles may be conventionally flower-like, they were not appropriate or suitable for the well-known purposes of ornamentation to which natural flowers may be temporarily devoted. In substance, the articles were not artificial flowers in accordance with common understanding.

This court in *Marshall Field & Co.* v. *United States*, supra, reviewed many cases involving the issue with which we are here concerned. There the subject merchandise was described by the court, 45 CCPA at 73–4, to be:

* * * a three-dimensional, realistic representation of a stem about 6 inches long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole is that of slightly rusty iron.

Also there was a framed representation consisting of:

* * * simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light gauge sheet metal and this sample is painted black, though the invoice calls for "rusty finish."

This court held that the goods were not in the category of "artificial fruits" or "artificial flowers" wherein they were classified. The court pointed out that the rationale expounded in both the *Cochran* and *Coro* cases was that the issue must be determined "in accordance with common understanding" and that "artificial flowers" must be suitable for the purposes of ornamentation to which natural flowers may be temporarily devoted, commenting, 45 CCPA at 79, that:

* * * an *artificial* flower, by definition, is one which is suited to the uses to which natural flowers may be put, and the chief use of real flowers is to ornament. * * * [Emphasis court's.]

\* \* \* \* \* \* \*

* * * an artificial flower can of course be used to ornament but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flower-like characteristics.

Applying the criteria enunciated in the *Marshall Field & Co.* case, we are persuaded that the record before us substantially supports the finding of the Customs Court that the goods in issue are wired electric lamps. Lighting is their primary and dominant function.

They are used in the same places and serve the same purpose as ordinary night lights. Their ornamental embellishment is merely secondary, and is not sufficient to place them in the category of artificial or ornamental flowers as contemplated in paragraph 1518(a). We are not persuaded that in the light of common understanding they are appropriate and suitable for the purposes of ornamentation to which the natural rose may be temporarily devoted.

Finding no reversible error in the judgment of the Customs Court, we *affirm* that judgment.